## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MEAGAN & KURT BROCKWAY,**<br>1165 Clydney Lane<br>Greencastle, PA 17225<br><br>        Plaintiffs,<br><br>*v.*<br><br>**OJEDAPO OJEYEMI, M.D.**<br>Advanced Pain Management Services, LLC<br>20680 Seneca Meadows Parkway<br>Suite 200<br>Germantown, MD 20876<br><br><br>        Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiffs Meagan and Kurt Brockway, by and through their attorneys, Matthew A. Nace, Esquire, and PAULSON & NACE, PLLC, hereby bring this claim against OJEDAPO OJEYEMI, M.D., and for their claim state:

## JURISDICTION

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiff is a citizen of the Commonwealth of Pennsylvania, and Defendants are incorporated in and/or citizens of the State of Maryland, and the amount in controversy exceeds the jurisdictional amount of $75,000.00.

2.      This Court has personal jurisdiction over Defendants pursuant to Md. Code, Courts and Judicial Proceedings § 6-103, and because Defendants have the requisite minimum contacts with the State of Maryland.

3.     Venue lies in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1402 since the occurrence which gave rise to the cause of action arose in the State of Maryland.

## PARTIES

4.     Plaintiff Meagan Brockway is an adult resident of the Commonwealth of Pennsylvania.

5.     Plaintiff Kurt Brockway is an adult resident of the Commonwealth of Pennsylvania.

6.     Plaintiffs are and, at all times relevant to this action, were married.

7.     At all times relevant hereto, AMERICAN SPINE CENTER, LLC was a corporation organized under the laws of the State of Maryland and conducting the business of providing health care services in Frederick County, Maryland.

8.     At all times relevant hereto, AMERICAN SPINE MANAGEMENT, LLC was a corporation organized under the laws of the State of Maryland and conducting the business of providing health care services in Frederick County, Maryland.

9.     At all times relevant hereto, AMERICAN SPINE SURGERY CENTER, LLC is and was a corporation organized under the laws of the State of Maryland and conducting the business of providing health care services in Frederick County, Maryland.

10.     Under information and belief, American Spine Center, LLC and American Spine Management, LLC have been dissolved; however American Spine Surgery Center, LLC is still in existence.

11.     American Spine Center, LLC, American Spine Management, LLC, and American Spine Surgery Center, LLC, at all times relevant to this action, acted in concert as one enterprise and are referred to hereinafter as "ASP."

12.     At all times relevant hereto, Defendant Ojedapo Ojeyemi, M.D. (hereinafter "Ojeyemi") was a healthcare provider conducting the business of providing health care services in Frederick County, Maryland.

13.     At all times relevant hereto, Defendant Ojeyemi was an  agents, servant, employee, partner, shareholder, or otherwise associated with ASP.

## BACKGROUND

14.     In 2017, various physicians, agents, servants, and employees of ASP were convicted for accepting kickbacks, conducting fraudulent billing, and committing tax evasion related to the manner in which it and its Healthcare Providers conducted their practice throughout the years.

15.     On June 15, 2016, the Plaintiff was seen by Dr. Ojeyemi with moderate-severe back pain located in "lower back, gluteal area, left flank, legs and thighs.  Pain is radiated to the left ankle, left calf, left foot and left thigh."

16.     Prior to this visit, Plaintiff had not undergone any conservative treatment, had not undergone any physical therapy, and had not been taking pain medications for this complaint.

17.     Dr. Ojeyemi's plan indicated that the PT had already gone through conservative treatment and was ready for surgical intervention.  He noted "She was offered LEF L45 and RIGHT L51 LED to address the pathology."

18.     On July 20, 2016, Plaintiff underwent a Right L5-1 and Left L4-5 LED by Dr. Ojeyemi at ASP.  Specifically, the documented procedure was:

1.     L5-1 Endoscopic microdiscectomy RIGHT
2.     L4-5 Endoscopic microdiscectomy LEFT
3.     Utilization of C-arm xray

19.     Upon information and belief, all aspects of this alleged procedure did not occur.

20.     Defendant and his practice did in fact bill for all aspects of this procedure.

21.     The operative report of Dr. Ojeyemi indicates that during the procedure he utilized "various types of reamers, rongeurs, and pituitaries on the herniated disc[s]."

22.     On July 29, 2016, Plaintiff was seen at ASP by Dr. Ojeyemi for complaints of pain radiating from the "lower back then to the left thigh, right WHOLE leg."

23.     Dr. Ojeyemi's plan was to simply "cont home exercise."

24.     On August 9, 2016, Plaintiff was experiencing weakness and pain in her foot and presented to the Emergency Department at Chambersburg Hospital.

25.     At Chambersburg Hospital, an MRI W/ and W/O contrast of her Lumbar Spine demonstrated a paracentral HNP at the L4-5 level and the L5-S1.

26.     The impression formed by the radiologist at Chambersburg Hospital was of:

1.     Acute radicular right leg pain – new
2.     Paresthesia right foot – new
3.     Has post-discectomy lumbar spine 3 weeks ago in Frederick Maryland
4.     Moderate sized left paracentral NHP at L4-L5, smaller right paracentral HNP
       at L5-S1, new versus residual.

27.     On August 10, 2016, Plaintiff presented back to ASP and was seen by Dr. Ojeyemi again with continued complaints as before to her right side.

28.     On August 19, 2016, at AES Dr. Sherlekar conducted a Lumbar Selective Nerve Root Block under IV Sedation with Fluoroscope of spine to her left side.

29.     As the summer ended, Plaintiff went back to work as a schoolteacher in pain.

30.     She continued to struggle at her job, frequently losing balance in her classroom.

31.     On December 19, 2015, with the first semester of school coming to an end, Plaintiff sought out a second opinion from Brian Holmes, MD at Parkway Surgery Center who conducted a Right, L5-S1 microdiscectomy, medial facetectomy, and foraminotomy and Left, L4-5 microdiscectomy, medial facetectomy, and foraminotomy

32.     The indication for the procedure was "refractory pain and imaging studies demonstrating a very large left L4-5 disc herniation and an irregular right L5-S1 disc herniation along path of the S1 nerve root.".

33.     On December 19, 2016, Dr. Holmes conducted a right L5-S1 microdiscectomy and a left L4-5 microdiscectomy.

34.     According to the operative report of Dr. Holmes, there was "no scarring or any evidence of canal entry" at the L5 nerve root site despite Dr. Ojeyemi's claim that he had utilized "various types of reamers, rongeurs, and pituitaries on the herniated disc."

35.     On January 18, 2017, Plaintiff presented back to Dr. Holmes for a follow-up visit, and it was noted that she had feeling back in her foot and was improving.

36.     Plaintiff continued to progress throughout the 2017 year as she underwent physical therapy, but continued to have episodic pain and weakness in her right leg/ankle/foot as well as flare ups in her back and continued to undergo medical treatment.

**Count I**
**Medical Negligence**

37.     Each of the preceding paragraphs is incorporated by reference herein.

38.     Defendant and his agents, servants and employees owed a duty to the Plaintiff to exercise the degree of skill, care, judgment and expertise ordinarily possessed and used by health care providers acting in the same or similar circumstances.

39.     Plaintiff relied upon Defendant, his agents, servants and employees to exercise such skill and care to properly, accurately, and timely diagnose, treat and manage her medical condition as other reasonable health care providers if presented with the same or similar circumstances.

40.     Defendant, his agents, servants and employees either did not possess the degree of skill, care, judgment and expertise required of them, or did not use the degree of skill, care, judgment and expertise required of them in treating and managing Plaintiff's condition.

41.     Defendant thereby breached his duties of care owed to Plaintiff, including, but not limited to, the following duties:

      a.   to have competently conducted an adequate pre-operative work-up of the Plaintiff;

      b.   to have competently conducted the procedures that they undertook;

      c.   to have competently treated the proper area of the body;

      d.   to have competently conducted the procedure that was in fact conducted;

      e.   to have competently provided post-operative care; and

      f.   being otherwise negligent.

42.     Plaintiff also asserts the doctrines of *res ipsa loquitur* and *respondeat superior*.

43.     As a proximate and direct result of the medical negligence of Defendant, Plaintiff has suffered and will continue to suffer economic damages included but not limited to medical bills and other such damages and non-economic damages including but not limited to mental anguish, emotional pain and suffering, physical pain and suffering, loss of society, companionship, and comfort.

## Count II
## NEGLIGENT MISREPRESENTATION

44.     Each of the preceding paragraphs is incorporated by reference herein.

45.     Defendant had a duty to act as reasonably prudent healthcare provider in providing services to its patients, including Plaintiff.

46.     Defendant breached his duty in that he negligently misrepresented to the Plaintiff what procedures she needed to undergo and what procedures were actually being conducted on her.

47.     Defendant made these statements expressly and implicitly in writing and orally.

48.     Defendant misrepresented the following:

      a.   That surgical intervention was needed on July 20, 2016 and that there was not an alternative course of treatment;

    b.   That she was undergoing and did in fact have a microdiscectomy at both the L5-S1 Right Level and the L5-L5 Left Level on July 20, 2016;

    c.   That she required a lumbar selective nerve root block to the Left side;

    d.   Otherwise misrepresented the treatment that was rendered to her.

49.    These misrepresentations were made by the Defendant with the intention of having Plaintiff rely upon these negligent misrepresentations.

50.    Defendant knew that the Plaintiff would rely upon these misrepresentations and choose his services, and in doing so, he could bill Plaintiff and her insurance company.

51.    Plaintiff did justifiably rely upon these representations in electing to undergo the treatment by Defendant.

52.    Defendant's negligent misrepresentations were a proximate cause of serious and permanent injuries.

53.    As a direct and proximate cause of the misrepresentations, Plaintiff has suffered economic and non-economic damages including pain and suffering, mental anguish, past and future medical bills, and loss of earning capacity.

54.    Plaintiff further relies upon on the doctrines of actual and apparent agency, *res ipsa loquitur*, and *respondeat superior* where applicable.

### Count III
### <u>Intentional Misrepresentation</u>

55.    Each of the preceding paragraphs is incorporated by reference herein.

56.    At all relevant times, Defendant had a duty to disclose specific facts regarding the treatment being rendered including but not limited to:

    g.   The necessity for such treatment;

    h.   The actuality of such treatment occurring;

    i.   Conducting a "sham procedure:" and

j.   Other material facts.

57.   Defendant intentionally failed to disclose these material facts to the Plaintiff with the intent to deceive and to profit from such deception.

58.   Defendant knew that had Plaintiff known the facts, she would have elected another course of treatment and/or another provider.

59.   Plaintiff acted in justifiable reliance on the undisclosed facts and suffered damages as a result.

60.   As a direct and proximate cause of the concealments, Plaintiff suffered economic and non-economic damages including pain and suffering, mental anguish, past and future medical bills, and loss of earning capacity.

61.   Plaintiff further relies upon the doctrines of actual and apparent agency, *res ipsa loquitur*, and *respondeat superior* where applicable.

## COUNT IV
### Fraud or Deceit

62.   Each of the preceding paragraphs is incorporated by reference herein.

63.   Defendant made false representations of material fact to the Plaintiff, including but not limited to:

k.   The necessity for such treatment;

l.   The actuality of such treatment occurring;

m.   Conducting a "sham procedure:" and

n.   Other material facts.

64.   Defendant knew of the falsity of such claims or made them with reckless indifference to the truth that it is reasonable to contend that they did so with knowledge of their falsity.

65.   Defendant made such statements with the intend that Plaintiff would act in reliance on such statements and Plaintiff did so rely.

66.     Defendant made such statements with the intent to profit from inaccurate billing practices and a necessity to conduct "additional" future surgeries.

67.     As a direct and proximate cause of the fraud and deceit, Plaintiff suffered economic and non-economic damages including pain and suffering, mental anguish, past and future medical bills, and loss of earning capacity.

## DAMAGE TO THE MARITAL RELATIONSHIP
### Count XI

68.     Plaintiffs adopt and incorporate each of the preceding paragraphs by reference herein

69.     Plaintiffs are in a marital relationship.

70.     As a proximate and direct result of the negligence and other conduct identified herein of the Defendant, Plaintiffs have suffered damage to the marital relationship and a loss of consortium, including but not limited to a loss of companionship, affection, assistance, and impairment of sexual relations.

## PUNITIVE DAMAGES
### Count XII

71.     Plaintiffs re-state and re-allege each of the preceding paragraphs.

72.     Defendant were grossly negligent and acted with actual malice and fraud by conducting fraudulent procedures upon Plaintiff.

73.     Plaintiffs seek punitive damages for this willful, wanton, fraudulent and malicious action in accordance with Maryland law.

**WHEREFORE** for the cause of actions stated, Plaintiffs seek all damages allowed by law and pray an award be entered against Defendant and in their favor in excess of the required jurisdictional amount of $75,000.00 and believed to be in excess of $1,000,000.

**\*\*\*Plaintiffs demand trial by jury\*\*\***

Dated: June 19, 2020

9

Respectfully submitted,

PAULSON & NACE, PLLC


/s/ Matthew A. Nace
Matthew A. Nace
CPF ID: 0812170318
1025 Thomas Jefferson St., NW
Suite 810
Washington, DC 20007
202-463-1999 – Telephone
202-223-6824 – Facsimile
man@paulsonandnace.com
*Counsel for Plaintiffs*

## CERTIFICATE OF GOOD STANDING

In accordance with Maryland Rule 1-313, I hereby certify that I am a member in good standing of the Maryland Bar and licensed to practice law in the State of Maryland with an office address in the District of Columbia.

/s/ Matthew A. Nace
Matthew A. Nace