**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MEAGAN BROCKWAY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 20-cv-1868-LKG |
| v. | ) | |
| | ) | January 13, 2023 |
| OJEDAPO OJEYEMI, M.D., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER ON MOTIONS *IN LIMINE*</u>

## I.  INTRODUCTION

This civil action involves claims that Defendant, Ojedapo Ojeyemi, M.D., breached the duty of care owed to Plaintiff, Megan Brockway, when he performed back surgery on her in 2016.  The parties have filed motions *in limine* in advance of trial.  ECF Nos. 45 and 46.  These motions have been fully briefed.  ECF Nos.  45, 46, 47 and 49.  No hearing is necessary to resolve these motions.  L.R. 105.6.  For the reasons that follow, the Court: (1) **GRANTS-in-PART and DENIES-in-PART** Plaintiffs' motion *in limine* and (2) **GRANTS-in-PART and DENIES-in-PART** Defendant's motion *in limine*.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

<u>The Plaintiffs' Claims</u>

This civil action involves claims that Defendant, Ojedapo Ojeyemi, M.D., breached the duty of care owed to Plaintiff, Megan Brockway, when he performed left L4 - L5 and right L5 - S1 lumbar endoscopic discectomy ("LED") back surgery on Ms. Brockway on July 20, 2016.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the Complaint (ECF No. 1) and Defendant's omnibus response in opposition to Plaintiffs' motion *in limine* and motion *in limine* (ECF No. 46).

ECF No. 1.  Following this surgery, Ms. Brockway experienced acute pain in her back.  ECF No. 1.

During a post-operation examination of Ms. Brockway conducted on August 10, 2016, Dr. Ojeyemi noted that there was a possible re-herniation of L5- S1 and residual scar tissue at L4-5. ECF No. 46 at 4.  Thereafter, Ms. Brockway received two other procedures to treat her back pain, that were performed by other doctors.  *Id.*  But, unfortunately, she continued to experience back pain.  *Id.*

Plaintiffs allege that Defendant breached his duty to, among other things, competently conduct the LED procedure, treat the proper area of Ms. Brockway's body and provide post-operative care.  ECF No. 1.  Plaintiffs also allege that Defendant misrepresented the procedures that Ms. Brockway needed to undergo, as well as the procedures actually performed on Ms. Brockway.  *Id.*  And so, they seek to recover monetary damages from Defendant.  *Id.*

Defendant disputes these allegations and he asserts several affirmative defenses in this case, including contributory negligence; assumption of risk; and failure to comply with mandatory condition precedent.  ECF No. 4 at 12-13.

Relevant to the pending motions, the parties have designated several medical experts in preparation for trial.  Specifically, Plaintiffs have designated Mark Weidenbaum, M.D. as their medical expert.  Dr. Weidenbaum is a board-certified orthopedic surgeon, who has had training in scoliosis and spine surgery.  ECF No. 46-2 at 3.  Dr. Weidenbaum has more than 30 years of experience performing spinal surgery. *Id.*  But, since 2018, he has transitioned his medical practice to a nonoperative medical practice.  *Id.*

Dr. Weidenbaum will testify that Defendant violated the standard of care by not recommending conservative treatment prior to surgery.  It is undisputed that Dr. Weidenbaum has not performed the LED procedure at issue in this case.  *Id.* at 8; ECF Nos. 46 and 47.

 Defendant has designated five medical experts to testify at trial.  First, Dr. Joseph O'Brien is a physician, board-certified in orthopedic surgery.  ECF No. 45-2.  Dr. O'Brien will testify that Defendant complied with the standard of care and did not cause Plaintiffs' claimed injuries and damages.  *Id.*  Second, Dr. Neal Naff is a physician, board-certified in neurological surgery.  *Id.*  Dr. Naff will also testify that Defendant complied with the standard of care and did not cause Plaintiffs' claimed injuries and damages.  *Id.*

Third, Dr. Aaron James is a physician, board-certified in anatomic pathology with expertise in bone and soft tissue pathology. *Id.* Dr. James will testify that he disagrees with the assertion that Defendant either did not perform the LED procedure for Ms. Brockway or did not perform it as he described. *Id.* Fourth, Dr. Mark Young is a physician, board-certified in physical medicine and rehabilitation. Dr. Young will testify that: (1) Ms. Brockway improved following her surgery with Defendant, and did well until the acute episode on August 8, 2016, which was consistent with re-herniation; (2) that re-herniation is not evidence of negligence; (3) that surgery was an appropriate option; and (4) that Plaintiffs did not sustain any injury or damage as a result of the care Ms. Brockway received from Defendant. *Id.*

Finally, Dr. Mark Murphy is a physician, board-certified in radiology with expertise in musculoskeletal imaging. *Id.* Dr. Murphy will testify that: (1) Ms. Brockway's course following her surgery with Defendant, including that her re-herniations and surgery with Dr. Holmes, was not due to any alleged breach of the standard of care by Defendant; (2) the July 20, 2016, LED procedure was performed as described by Defendant; and (3) he disagrees with Dr. Weidenbaum's opinion that Defendant violated the standard of care by not recommending conservative treatment prior to surgery. *Id.*

### B.      Procedural Background

On March 14, 2022, Plaintiffs filed a motion *in limine*. ECF No.45. Defendant filed an ominibus response in opposition to Plaintiffs' motion and a motion *in limine* on April 15, 2022. ECF No. 46.

On May 13, 2022, Plaintiffs filed a reply brief and a response in opposition to Defendant's motion *in limine*. ECF No. 47. On May 13, 2022, Defendant file a sur-reply and a reply brief in support of his motion *in limine*. ECF No. 49.

These motions having been fully briefed, the Court resolves the pending motions.

## III.      STANDARDS FOR DECISION

### A.      Motions *In Limine*

Motions *in limine* aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial. *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citations omitted). "A motion in limine to preclude evidence calls on the court to make a preliminary determination on the

admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (internal citations omitted). The Court has wide discretion in rulings governing trial, including whether to preclude or admit evidence or to prohibit comment, arguments, or questioning. *See, e.g., Herring v. New York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion."); *see also United States v. Jones*, 7 356 F.3d 529, 535 (4th Cir. 2004) ("The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion.").

### B.     Relevance

Pursuant to Fed. R. Evid. 402, only relevant evidence is admissible at trial. *See* Fed. R. Evid. 402. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. And so, evidence is relevant only if it logically relates to matters that are at issue in the case. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). The party seeking to introduce evidence bears the burden of establishing relevancy. *See Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990). Fed. R. Evid. 403 also allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403.

### C.     Expert Testimony

Lastly, the proponent of expert testimony "bears the burden of establishing its admissibility." *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 97 (D. Md. 2020). In this regard, Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court has recognized that Fed. R. Evid. 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of expert scientific evidence.  *See Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 588 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1998).  Given this, it is the Court's responsibility to "'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597).

Under *Daubert*, a Fed. R. Evid. 702 evidentiary inquiry focuses on two threshold inquiries: reliability and relevance.  *See Daubert*, 509 U.S. at 599.  First, the "reliability" component requires that this Court "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'"  *Nease*, 848 F.3d at 229 (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)).  Second, the "relevance" component requires that the Court find that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Daubert*, 509 U.S. at 591.  And so, "if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded."  *Sardis v. Overhead Door Corp*., 10 F.4th 268, 281 (4th Cir. 2021).

## IV.    ANALYSIS

### A.    Plaintiffs' Motion *in Limine*

The Court first addresses Plaintiffs' motion *in limine* seeking to preclude Defendant from presenting evidence and arguments related to his 15 affirmative defenses and to limit the testimony of Defendant's medical experts.  ECF No. 45.  For the reasons that follow, the Court GRANTS-in PART and DENIES-in-PART Plaintiffs' motion.

#### 1.    Defendant Must Provide More Detail About His Affirmative Defenses

As an initial matter, Defendant must provide additional detail about his affirmative defenses prior to the trial in this civil action.  In their motion *in limine*, Plaintiffs seek to preclude Defendant from presenting any evidence or arguments related to his affirmative defenses in this case, because the opinions of Defendant's experts do not address these affirmative defenses and the affirmative defenses are also not relevant to the issues in this case.  ECF No. 45.  Defendant originally asserted 15 affirmative defenses in this case, but, during the briefing of Plaintiffs'

motion *in limine* he limited the number of affirmative defenses to the following 13 affirmative defenses: (1) general denial of allegations; (2) contributory negligence; (3) assumption of risk; (4) failure to state a claim; (5) damages were caused by the actions of third parties not in Defendant's control; (6) damages were caused by the supervening, intervening acts of others; (7) failure to mitigate damages; (8) failure to comply with mandatory condition precedent; (9) waiver, release, accord and satisfaction, res judicata, estoppel, and unclean hands; (10) damages are subject to setoff or reduction; (11) reduction of any verdict or judgment; (12) failure to join all necessary parties; and (13) any additional defenses.  ECF No. 48.

Defendant also argues that the Court should not preclude evidence and testimony related to these affirmative defenses, because these defenses are addressed in the opinions of his medical experts and he is entitled to present evidence to support these defenses at trial.  *Id.*  But, Defendant does not dispute that he did not provide a factual basis for these affirmative defenses in his responses to Plaintiffs' discovery requests.  ECF No. 46; *see also* ECF No. 45 at 3. Defendant also fails to identify the specific information contained in the reports of his medical experts that provide this important detail.  ECF. Nos. 4 and 48.  Given this, the Court is concerned that Plaintiffs lack adequate notice of the nature of Defendant's affirmative defenses and factual basis for these defenses.

Under certain circumstances, Defendant's failure to provide this important information would be grounds for precluding Defendant from presenting any evidence and arguments in support of these defenses at trial.  But, the Court is satisfied that this problem can be best remedied here, by requiring Defendant to promptly disclose this information to Plaintiff, because a trial date has not yet been set in this case.  And so, the Court DIRECTS Defendant to disclose in writing **on or before January 27, 2023**: (1) each of the affirmative defenses that he intends to raise at trial and (2) a summary of the factual basis for each affirmative defense.

### 2.      The Court Declines To Limit The Testimony Of Defendant's Experts

With regards to the second issue raised in Plaintiffs' motion, Plaintiffs argue without persuasion that the Court should limit the testimony of Defendant's medical experts, upon the ground that their testimony would be cumulative.  Fed. R. Evid. 403 allows the Court to exclude relevant evidence if its probative value is substantially outweighed by, among other things, undue delay, wasting time, or needlessly presenting cumulative evidence.  *See* Fed. R. Evid. 403.

And so, Plaintiffs correctly argue here that the Court may limit the testimony of Defendant's medical experts in this case, if it concludes that this testimony would needlessly present cumulative evidence to the jury or waste time during the trial.

In this regard, Defendant has designated the following five medical experts for trial: Joseph O'Brien, M.D. (orthopedic surgery); Neal Naff, M.D. (neurological surgery); Aaron James, M.D. (anatomic pathology); Mark Young, M.D. (physical medicine and rehabilitation); and Mark Murphy, M.D. (radiology).  ECF No. 45-2.  As Defendant acknowledges, there is some overlap in the expected testimony of these experts.  ECF No. 46 at 11-12.  For example, Drs. O'Brien, Naff and Murphy all appear to be prepared to testify that Defendant satisfied the standard of care and that he did not cause Plaintiffs' injuries and damages.  ECF No. 45-2.  Drs. James and Murphy similarly appear to be prepared to testify that Defendant performed the LED procedure for Ms. Brockway as described by Defendant.  *Id.*

But, as Defendant correctly observes, each of his medical experts will bring a different area of expertise to their respective testimony.  Notably, Dr. O'Brien is a board-certified orthopedic surgeon, while Dr. James is board-certified in anatomic pathology, Dr. Neal Naff is board-certified in neurological surgery, Dr. Mark Young is board-certified in physical medicine and rehabilitation and Dr. Mark Murphy is board-certified in radiology.  Given this, Defendant has shown that each of his medical experts has a unique professional background that will inform their respective opinions and that their different perspectives about this dispute would aid the finder of fact at trial.  And so, the Court declines to limit the testimony of these experts at trial. Fed. R. Evid 403.

### B.     Defendant's Motion *in Limine*

Turning to the Defendant's motion *in limine*, Defendant seeks to: (1) exclude the testimony of Plaintiffs' medical expert, Dr. Mark Weidenbaum, upon the grounds that he is not qualified to opine on the applicable standard of care in this case and that his expert opinions are unreliable; (2) preclude evidence about certain criminal convictions related American Spine; (3) preclude evidence that the surgery performed by Defendant was a "sham;" (4) preclude evidence that the nerve block procedure performed on Ms. Brockway's back was on wrong side; and (5) preclude the use of so-called "reptile litigation tactics" at trial.  ECF No. 46.  For the reasons that follow, the Court GRANTS-in PART and DENIES-in-PART Defendant's motion.

### 1.    The Court Will Limit The Testimony Of Dr. Weidenbaum

First, Defendant persuasively argues that that the expert testimony of Dr. Weidenbaum should be limited, because it is undisputed that he has no experience performing the LED surgery that is at issue in this case.  ECF No. 46 at 14-24.  Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  And so, under *Daubert*, a Fed. R. Evid. 702 evidentiary inquiry focuses on two threshold inquiries: reliability and relevance.  *See Daubert*, 509 U.S. at 599.

Here, Defendant argues that Dr. Weidenbaum's expert opinion should be excluded for three reasons: (1) Dr. Weidenbaum has never performed, or received training for, the LED procedure at issue in this case and, thus, he cannot opine on the appropriate standard of care; (2) Dr. Weidenbaum's opinion that Defendant did not perform surgery as described in his operative note lacks foundation; and (3) Dr. Weidenbaum's damages opinion is irrelevant, unreliable and inadmissible.  ECF No. 46 at 12-24.  With regards to Dr. Weidenbaum's qualifications as an expert in this case, Plaintiffs correctly observe in their response in opposition to Defendant's motion that there can be no genuine question that Dr. Weidenbaum is a qualified expert in the field of orthopedic surgery.  ECF No. 47 at 16-18.  Dr. Weidenbaum is a board-certified orthopedic surgeon, who has had training in scoliosis and spine surgery, with more than 30 years of experience performing spinal surgery.  ECF No. 46-2 at 3.  While he no longer performs spinal surgery, it is undisputed that Dr. Weidenbaum was performing these procedures when the LED procedure at issue in this case was performed on Ms. Brockway.  *Id.*

The Court agrees, however, with Defendant that Dr. Weidenbaum lacks the *specific* expertise and experience related to the LED procedure at issue in this case, to be designated as an expert with regards to this procedure.  It is undisputed that Dr. Weidenbaum has not performed the LED procedure at issue in this case.  It is also undisputed that Dr. Weidenbaum has not received any training on this procedure.  Because Plaintiffs have not shown that the

standard of care for orthopedic and spinal surgery generally, and for the LED procedure at issue in this case, are sufficiently similar, the Court will GRANT-in-PART Defendant's motion to exclude this testimony and limit Dr. Weidenbaum's expert testimony to the standard of care generally applicable to orthopedic and spinal surgery.[2]

Defendant's remaining objections to Dr. Weidenbaum's expert testimony–that Dr. Weidenbaum's opinion that Defendant did not perform surgery as described in his operative note lacks foundation and that Dr. Weidenbaum's damages opinion is irrelevant, unreliable and inadmissible–pertain to the weight of the evidence in this case.  Given this, the Court concludes that these matters are appropriately left for the finder of fact to resolve at trial.  And so, the Court will DENY Defendant's motion *in limine* with regards to these two issues.

### 2.    The Court Will Preclude Evidence Of The American Spine Convictions And The Use of Term "Sham Procedure"

The next two issues raised in Defendant's motion *in limine* are largely agreed upon by the parties.  First, Defendant requests that the Court preclude the introduction of any evidence at trial about the criminal convictions of certain physicians and employees of American Spine who are not parties to this action.  ECF No. 46 at 24.  The parties agree that these individuals and American Spine are not parties to this action and that the subject criminal convictions are not relevant to this dispute.  ECF Nos. 46 at 24 and 47 at 18.  And so, the Court agrees that evidence about these criminal convictions should not be admissible at trial.[3]  Because the parties also agree that the parties should not refer to the LED procedure performed by Defendant as a "sham" procedure, the Court will preclude the use of this term at trial.

---

[2] Plaintiffs correctly observe that the Maryland Court of Special Appeals has held that a medical expert need not be the same kind of health care provider as the Defendant, so long as he is qualified in a related field.  ECF No. 47 at  14-15; *see also Nance v. Gordon*, 210 Md. App. 26, 32, 62 A.3d 185, 188-89, *cert. denied*, 432 Md. 468, 69 A.3d 475 (2013).  But, they have not shown that Dr. Weinbaum's expertise and experience in field of orthopedic surgery is sufficiently related to Dr. Oyeyemi's expertise and experience performing the LED procedure.  *See Jones v. Bagalkotakar*, 750 F.Supp. 574, 581 (D. Md. 2010) (holding that, if the procedure is one in which the purported expert does not have experience, or performs with a meaningfully different standard, the expert does not qualify under the Maryland Health Care Malpractice Claim Act.).

[3] Plaintiffs are not, however, precluded from presenting evidence at trial regarding Defendant's professional association with American Spine as it pertains to his education, training and background.

### 3.   The Court Will Preclude Evidence Of The Nerve-Block Procedure

The Court will also preclude the presentation of any evidence that the nerve block procedure performed on Ms. Brockway's back was performed on wrong side as irrelevant and potentially prejudicial to Defendant.  There is no dispute in this case that this nerve block procedure was not performed by Defendant.  ECF Nos. 46 at 25 and 47 at 19.  Plaintiffs' claims in this case also do not pertain to this procedure.  Given this, the nerve block procedure is not relevant to the claims and issues in this case.

### 4.   The Court Declines To Prohibit The Use of "Reptile Litigation Tactics"

As a final matter, the Court declines Defendant's request to preclude the use of so-called "reptile litigation tactics" in this case, because this request is not appropriate relief pursuant to a motion *in limine*.  Defendant argues that Plaintiffs' counsel will employ "reptile litigation tactics" in this case, which involve establishing an overall safety rule that Plaintiffs will argue was not met.  ECF No. 46 at 26.  But, to the extent this is true, Defendant provides no legal basis for the Court to prohibit Plaintiffs from employing such a strategy in this litigation.  ECF No. 46 at 26-30.  And so, the Court will DENY Defendant's motion *in limine* with regards to this final issue.

## V.   CONCLUSION

For the foregoing reasons, the Court:

1.      **GRANTS-in-PART and DENIES-in-PART** Plaintiffs' motion *in limine;* and

2.       **GRANTS-in-PART and DENIES-in-PART** Defendant's motion *in limine*.

In addition, the Court **ORDERS** that:

1.      Defendant shall disclose in writing **on or before January 27, 2023**: (1) each affirmative defense that he will raise at trial and (2) the factual basis for these affirmative defenses.

2.      The parties shall **MEET AND CONFER** and **FILE** a joint status report **on or before February 13, 2023**, stating their respective views on the following issues:

    a.      The anticipated length of trial;

   b.     The issues for trial;

   c.     The number of fact and expert witnesses;

   d.     Any unique issues about the trial; and

   e.     Whether the parties consent to participate in a settlement conference
          with a Magistrate Judge.

**IT IS SO ORDERED.**


                              s/Lydia Kay Griggsby
                              LYDIA KAY GRIGGSBY
                              United States District Judge